# EXHIBIT A

Electronically FILED by Superior Court of California, County of Los Angeles on 06/11/2020 02:46 PM Sherri R. Carter, Executive Officer/Clerk of Court, by M. Barel, Deputy Clerk

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

FORD MOTOR COMPANY, A Delaware Corporation; and DOES 1
through 20, inclusive,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

DEREK WOODS, an individual,

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* Stanley Mosk Courthouse<br><br>111 N. Hill Street<br>Los Angeles, CA 90012 | CASE NUMBER:<br>*(Número del Caso):*<br>20STCV22117 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
David N. Barry, Esq. 11845 W. Olympic Blvd., Suite 1270, Los Angeles, CA 90064 (310) 684-5859

| | | |
|---|---|---|
| DATE:<br>*(Fecha)* 06/11/2020 | Sherri R. Carter Executive Officer / Clerk of Court<br>Clerk, by M. Barel | , Deputy<br>*(Adjunto)* |
| | *(Secretario)* | |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

under: ☐ CCP 416.10 (corporation)      ☐ CCP 416.60 (minor)
       ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
       ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)

☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>www.courtinfo.ca.gov |

Assigned for all purposes to: Stanley Mosk Courthouse, Judicial Officer: Elaine Lu

Electronically FILED by Superior Court of California, County of Los Angeles on 06/11/2020 02:46 PM Sherri R. Carter, Executive Officer/Clerk of Court, by M. Barel,Deputy Clerk

1  DAVID N. BARRY, ESQ. (SBN 219230)
   THE BARRY LAW FIRM
2  11845 W. Olympic Blvd., Suite 1270
   Los Angeles, CA 90064
3  Telephone: 310.684.5859
   Facsimile: 310.862.4539
4
   Attorneys for Plaintiff, DEREK WOODS
5

6

7

8              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9    **FOR THE COUNTY OF LOS ANGELES – STANLEY MOSK COURTHOUSE**

10   DEREK WOODS, an individual,                Case No. 20STCV22117

11

12                    Plaintiff,               **COMPLAINT FOR DAMAGES**

13        v.

14

15   FORD MOTOR COMPANY, A Delaware

16   Corporation;  and  DOES  1  through  20,
                                              *Assigned for all purposes to the Hon.*
17   inclusive,                               *in Dept.*

18                    Defendants.

19

20

21        1.   Breach of Implied Warranty of Merchantability under the Song-Beverly Warranty Act.

22        2.   Breach of Express Warranty under the Song-Beverly Warranty Act.

23        3.   Fraudulent Concealment.

24   JURY TRIAL DEMANDED.

25

26

27

28

1   PLAINTIFF DEREK WOODS, an individual, hereby alleges and complains as follows:

2   **GENERAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

3   1. Defendant, FORD MOTOR COMPANY (hereinafter referred to as "Manufacturer"),

4   is a corporation doing business in the County of Los Angeles, State of California, and, at all times

5   relevant herein, was/is engaged in the manufacture, sale, distribution, and/or importing of Ford

6   motor vehicles and related equipment.

7   2. The true names and capacities, whether individual, corporate, associate, or otherwise, of

8   the Defendants, Does 1 through 20, inclusive, are unknown to Plaintiff who therefore sues these

9   Defendants by such fictitious names. Plaintiff will seek leave to amend this Complaint to set forth

10  their true names and capacities when they have ascertained them. Further, Plaintiff is informed and

11  believes, and thereon alleges, that each of the Defendants designated herein as a "Doe" is

12  responsible in some manner for the events and happenings herein referred to and caused injury and

13  damage to Plaintiff as herein alleged.

14  3. Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned,

15  Defendants, and each of them, were the agents, servants, and/or employees of each of their Co-

16  Defendants. Plaintiff is informed and believes, and thereon alleges, that in doing the things

17  hereinafter alleged Defendants, and each of them, were acting in the course and scope of their

18  employment as such agents, servants, and/or employees, and with the permission, consent,

19  knowledge, and/or ratification of their Co-Defendants, principals, and/or employers.

20  4. On or about December 1, 2017, defendants Manufacturer and Does 1 through 20

21  inclusive, manufactured and/or distributed into the stream of commerce a new 2017 Ford Focus,

22  VIN 1FADP3K23HL231875 (hereinafter referred to as the "Vehicle") for its eventual sale/lease in

23  the State of California.

24  5. On or about July 5, 2019, Plaintiff purchased, for personal, family, and/or household

25  purposes, the subject Vehicle from the Seller. The purchase agreement is in the possession of

26  Defendants.

27  6.    The subject Vehicle was/is a "new motor vehicle" under the Song-Beverly Warranty

28  Act.

7. Along with the purchase of the Vehicle, Plaintiff received written warranties and other express and implied warranties including, but not limited to, warranties from Manufacturer and Seller that the Vehicle and its components would be free from all defects in material and workmanship; that the Vehicle would pass without objection in the trade under the contract description; that the Vehicle would be fit for the ordinary purposes for which it was intended; that the Vehicle would conform to the promises and affirmations of fact made; that Defendants, and each of them, would perform any repairs, alignments, adjustments, and/or replacements of any parts necessary to ensure that the Vehicle was free from any defects in material and workmanship; that Defendants, and each of them, would maintain the utility of the Vehicle for Three (3) years or 36,000 miles under the basic warranty, Five (5) years or 60,000 miles under the powertrain warranty, Seven (7) years or 100,000 miles under the 14M01 extended warranty and Ten (10) years or 150,000 miles under the emissions warranty and the 14M02 extended warranty, and would conform the Vehicle to the applicable express warranties. (A copy of the written warranties is in the possession of the Defendants).

8. Plaintiff has duly performed all the conditions on Plaintiff's part under the purchase agreement and under the express and implied warranties given to plaintiff, except insofar as the acts and/or omissions of the Defendants, and each of them, as alleged herein, prevented and/or excused such performance.

9. Plaintiff has delivered the Vehicle to the Manufacturer's authorized service and repair facilities, agents and/or dealers, including Seller, on at least Two (2) separate occasions resulting in the Vehicle being out of service by reason of repair of nonconformities. Repair Orders/Invoices are in the possession of Defendants.

10. By way of example, and not by way of limitation, the defects, malfunctions, mis-adjustments, and/or nonconformities with Plaintiff's Vehicle include the following: Plaintiff has submitted the subject Vehicle for defects and malfunctions, specifically for issues with transmission issues, vehicle shaking, and fuel tank deformation.

11. Each time Plaintiff delivered the nonconforming Vehicle to a Manufacturer-authorized service and repair facility, Plaintiff notified Defendants, and each of them, of the

defects, malfunctions, mis adjustments, and/or nonconformities existent with the Vehicle and demanded that Manufacturer or its representatives repair, adjust, and/or replace any necessary parts to conform the Vehicle to the applicable warranties.

12.    Each time Plaintiff delivered the nonconforming Vehicle to a Manufacturer-authorized service and repair facility, Defendants, and each of them, represented to Plaintiff that they could and would conform the Vehicle to the applicable warranties, that in fact they did conform the Vehicle to said warranties, and that all the defects, malfunctions, mis adjustments, and/or nonconformities have been repaired; however, Manufacturer or its representatives failed to conform the Vehicle to the applicable warranties because said defects, malfunctions, mis adjustments, and/or nonconformities continue to exist even after a reasonable number of attempts to repair was given.

13.    The subject vehicle is equipped with Ford's "PowerShift Transmission." This transmission was designed and marketed as a more advanced and fuel-efficient alternative to a traditional manual or automatic transmission. The Powershift Transmission was installed in both the Ford Focus and Ford Fiesta vehicle's. Ford offered it as the sole "Automatic" option in the subject vehicle.

14.    Plaintiff is informed and believes that traditional manual transmissions use a drive-controlled clutch. By pressing and releasing a foot pedal, the driver engages and disengages the engine from the transmission, allowing the vehicle to travel smoothly while the driver manually changes gears.

15.    Typical automatic transmissions free the driver from operating the clutch through the use of a fluid-filled device called a torque converter. The torque converter substitutes for the manual transmission through fluid medium. While typical automatic transmissions offer increased convenience, they are generally less fuel efficient and slower-shifting than their manual counterparts. This is because the torque converter transfers power less efficiently than a clutch.

///

///

///

-4-

16.     Ford's PowerShift Transmission, while sometimes referred to as an "automatic," is actually a set of computerized manual transmission. It lacks a torque converter, instead using two "dry" clutches to directly engage and disengage the engine with and from the transmission. Whereas similar "automated manual" transmissions on the market use "wet" clutches bathed in oil, Ford's PowerShift Transmission clutches lack the oil pumps and other components of a wet clutch system, and instead operate "dry."

17.     Plaintiff is informed and believes that Ford designed the subject vehicle's PowerShift Transmission in an effort to meet heightened governmental and consumer expectations for fuel economy, performance, and efficiency.  According to Ford's own press release dated March 10, 2010, "PowerShift with dry-clutch facings and new energy-saving electromechanical actuation for clutches and gear shifts saves weight, improves efficiency, increases smoothness, adds durability and is sealed with low-friction gear lubricant for the life of the vehicle. This transmission requires no regular maintenance."

18.     Ford marketed and sold this "PowerShift Transmission" as a best of both worlds alternative offering a manual transmission's fuel economy with an automatic transmission's ease of operation and shift quality.  In practice, however, Ford's PowerShift Transmission is plagued by numerous problems and safety concerns which have only recently come to public light.

19.     Specifically, the PowerShift Transmission contains one or more design and/or manufacturing defects that cause, among other problems, transmission slips, bucking, kicking, jerking, harsh engagement, premature internal wear, sudden acceleration, delay in downshifts, delayed acceleration, and difficulty stopping the vehicle (the "Transmission Defect").

///
///
///
///
///
///
///

20.     The Transmission Defect causes unsafe conditions, including, but not limited to, the subject vehicle suddenly lurching forward, delayed acceleration, and sudden loss of forward propulsion. These conditions present a safety hazard because they severely affect the driver's ability to control the car's speed, acceleration, and deceleration. For example, these conditions make it difficult to safely merge into traffic. Even more troubling, the Transmission Defect can cause the vehicle to fail to downshift and decelerate when the brakes are depressed. As a result, drivers of the affected vehicles have experienced their cars lurching forward into intersections at red lights due to the failure of their braking efforts to stop the car.

21.     The Transmission Defect also causes premature wear to the Dual Clutch Transmission's clutch plates and other components, which results in premature transmission failure and requires expensive repairs, including transmission replacement.

22.     Beginning as early as 2010, Defendant was aware that the PowerShift Transmission contained one or more design and/or manufacturing defects that negatively affect the drivability of the subject vehicle and cause safety hazards.  Specifically, before offering vehicles with the PowerShift Transmission for sale in the United States, Ford offered the same vehicles, equipped with a similar dual-clutch transmission, in Europe and Australia. Although the United States version utilizes dry-clutches as opposed to the European and Australian version's wet-clutches, Ford acknowledged that the transmission offered for sale in the United States is "derivative" of the design from the European and Australian models. European and Australian versions of the dual-clutch transmission suffered from similar defects known to Ford as alleged herein.

23.     In addition to having years of feedback and testing from its European and Australian dual-clutch transmission, according to Ford, its team:

> "logged approximately three years or 60,000 man-hours of computer-aided mathematical modeling, simulation and analysis of engine speeds, torque and clutch capacity in only 24 months real time to prove the THF concept was production ready."

///

-6-
COMPLAINT FOR DAMAGES

24.     Torque Hole Vectoring is a program in the PowerShift Transmission that uses a combination of computer algorithms and computer aided tools to fill the torque hole, or what is more commonly perceived as a hesitation, while shifting. Ford claimed the Torque Hole Vectoring technology would create a smoother driving experience for the customer.

25.     Despite these claims, plaintiff is informed and believes that consumers have not experienced a smoother ride from Torque Hole Vectoring, or any other technology incorporated in the PowerShift Transmission. To the contrary, multiple reviews in automotive journals and customer complaints documented and confirmed that the transmissions in other vehicles were exhibiting the defects, malfunctions, mis adjustment, and nonconformities that the Plaintiff's vehicle has experienced and which are now complained of.

26.     In a 2011 New York Times review of the Ford Focus, the reviewer stated that "Ford programmed the PowerShift dual-clutch transmission to change gears in odd and infuriating ways" and that "[t]he transmission is often in the wrong gear at the wrong time, resulting in jerks, pauses and lethargic acceleration."

27.     In response to these criticisms, Greg Burgess, an engineer at Ford, conceded in the same New York Times article that "[i]t is quite a challenge to deliver something that is very, very fuel-efficient and yet feels like conventional automatic, and there are some balances and some tradeoffs that we make."

28.     As a result of the Transmission Defect, in 2010 and 2011, Ford even issued several Technical Service Bulletins ("TSBs") to its dealers in the United States acknowledging defects in the PowerShift Transmission. Ford's TSB from September 2010, covering plaintiff's vehicle, informed dealers of "concerns such as no engagement or intermittent no engagement in Drive or Reverse when shifting from Park to Drive or Reverse, grinding noise during engagement, and/or a check engine light with transmission control module (TCM) diagnostic trouble code..."

29.     Similarly, Ford's TSB released on January 1, 2011, covering plaintiff's vehicle with the PowerShift Transmission, informs dealers of problems with the PowerShift Transmission causing "a loss of power, hesitation, surge, or lack of throttle response while driving."

///

COMPLAINT FOR DAMAGES

30.     Ford's TSB from March 31, 2011, also covering the PowerShift Transmission informs dealers of problems where the PowerShift Transmission "exhibit[s] a rattle/grind noise in reverse only."

31.     Ford subsequently issued two separate TSBs in May of 2011, both covering the Ford Fiesta. These TSBs addressed problems with the PowerShift Transmission including "concerns in Drive or Reverse when shifting from Park to Drive or reverse, no engagement…"

32.     Another Ford TSB released in September 2011 advised dealers to reprogram the transmission computer if 2011 Ford Fiesta owners complained about "hesitation when accelerating from a low speed after coast down, harsh or late 1-2 upshift, harsh shifting during low-speed tip-in or tip-out maneuvers and/or engine RPM flare when coasting to a stop."

33.     The 2012 Ford Focus was the subject of a September 2011 Ford TSB, which informed dealers of transmission problems including: "RPM flare on deceleration coming to a top, rough idle on deceleration coming to a stop, intermittent engine idle on deceleration coming to a stop, intermittent engine idle fluctuation at a stop, intermittent vehicle speed control inoperative, intermittent harsh engagement/shift…"

34.     In May of 2012, Ford issued a "Customer Satisfaction Program" Program Number 12B37." In a letter sent to 2012 Ford Focus drivers, Ford indicated that drivers "may experience rough or jerky automatic transmission shifts. In addition, the vehicle may experience roll back when the driver is transitioning from the brake pedal to the accelerator pedal while on a slight incline." Significantly, Ford did not issue a recall and did not warn drivers of the safety risks associated with these known problems. Because Ford will not notify owners of the vehicle's equipped with the PowerShift Transmission, including Plaintiff, that the transmission is defective, they are subjected to dangerous driving conditions that often occur without warning.

35.     Ford was well aware of the PowerShift Transmission defects that began in 2010 and which continue to pose dangerous safety concerns and drivability problems consumer vehicles such as the plaintiffs. However, Ford refused to acknowledge these concerns. Instead of repairing the defects in the subject vehicle's transmission, Ford either refused to acknowledge their existence, or performed ineffectual software upgrades that simply masked the defects.

36.     Plaintiff has only recently learned from a September 10, 2019 investigative article from the Detroit Free Press, that transmission problems plaguing the subject vehicle were not just specific to the subject vehicle but that it involved virtually all of the Focus and Fiesta model vehicles sold beginning with model year 2010-2011.  Plaintiff's review of that article also revealed that Ford was well aware of the inherent problems and defects that plagued the PowerShift Transmission but failed to correct them and in fact, hid them from the public.  In fact, the article stated, in part:

> "The automaker pushed past company lawyers' early safety questions and a veteran development engineer's warning that the cars weren't roadworthy, internal emails and documents show. Ford then declined, after the depth of the problem was obvious, to make an expensive change in the transmission technology.  Instead, the company kept trying to find a fix for the faulty transmission for five years while complaints and costs piled up. In the interim, Ford officials prepared talking points for dealers to tell customers that the cars operated normally when, in fact, internal documents are peppered with safety concerns and descriptions of the defects."

37.     At the time that plaintiff purchased his vehicle, he was not aware of the inherent defects that plagued the PowerShift Transmission.  Further, plaintiff was not informed of or advised of pervasive transmission problems at the time the subject vehicle was purchased and plaintiff had no previous knowledge of any issues.  Likewise, throughout plaintiff's repeated presentation of the subject vehicle to authorized Ford dealerships for repair of the transmission concerns, no one at the repairing dealership informed the plaintiff that the PowerShift Transmission was inherently defective and was essentially, unrepairable as plaintiff has now learned.

38.     If Plaintiff had known about these defects at the time of sale or lease and if the information was made publicly available, Plaintiff would not have purchased or leased the subject vehicle.

///

///

///

1        39.    In fact, as demonstrated in the September 10, 2019 investigative report from the

2    Detroit Free Press, Ford had superior and exclusive knowledge of the transmission defects and

3    knew or should have known that the defect was not known or reasonably discoverable by Plaintiff

4    before he purchased or leased the subject vehicle.  Indeed, the investigative report is culled from

5    internal company documents and materials identified and produced in lawsuits which plaintiff was

6    not a party to and would not have had access to as such documents are ordinarily produced

7    confidentially.  Further, Ford was clearly engaged in damage control and was working to "control

8    the narrative" instead of informing customers that the vehicle was defective and pulling the vehicle

9    from the market.  No amount of due diligence by the plaintiff would have uncovered such

10   information that was exclusive to the Ford.

11       40.    The amount in controversy exceeds TWENTY-FIVE THOUSAND DOLLARS

12   ($25,000.00), exclusive of interest and costs, for which Plaintiff seeks judgment against

13   Defendants, together with equitable relief.  In addition, Plaintiff seeks damages from Defendants,

14   and each of them, for incidental, consequential, exemplary, and actual damages including interest,

15   costs, and actual attorneys' fees.

16   ///

17   ///

18   ///

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

COMPLAINT FOR DAMAGES

**FIRST CAUSE OF ACTION**

**Breach of Implied Warranty of Merchantability under Song-Beverly Warranty Act**

**Against all Defendants**

41.     Plaintiff realleges each and every paragraph (1-40) and incorporates them by this reference as though fully set forth herein.

42.     The distribution and sale of the Vehicle was accompanied by the Manufacturer implied warranty that the Vehicle was merchantable.

43.     Furthermore, Defendants, and each of them, impliedly warranted, inter alia, that the Vehicle would pass without objection in the trade under the contract description; that the Vehicle was fit for the ordinary purposes for which it was intended; that the Vehicle was adequately assembled; and/or that the Vehicle conformed to the promises or affirmations of fact made to Plaintiff.

44.     As evidenced by the defects, malfunctions, mis adjustments, and/or nonconformities alleged herein, the Vehicle was not merchantable because it did not have the quality that a buyer would reasonably expect, because it could not pass without objection in the trade under the contract description; because it was not fit for the ordinary purposes for which it was intended; because it was not adequately assembled; and/or because it did not or could not be conformed to the promises or affirmations of fact made to Plaintiff.

45.     Upon discovery of the Vehicle's nonconformities, Plaintiff took reasonable steps to notify Defendants, and each of them, within a reasonable time that the Vehicle did not have the quality that a buyer would reasonably expect and, further, justifiably revoked acceptance of the nonconforming Vehicle.

46.     Plaintiff hereby gives written notice and justifiably revokes acceptance of the nonconforming Vehicle under the Commercial Code sections 2607 and 2608. Plaintiff further demands that the Manufacturer cancel the sale, take back the nonconforming Vehicle, refund all the money expended, pay the difference between the value of the Vehicle as accepted and the value the Vehicle would have had if it had been as warranted, and/or pay damages under the Commercial Code sections 2711, 2714, and 2715. Defendants, and each of them, have, however, refused to

1   comply.

2       47.     Plaintiff hereby gives written notice and makes demand upon Manufacturer for

3   replacement or restitution, pursuant to Song-Beverly. Defendants, and each of them, knew of their

4   obligations under Song-Beverly; however, despite Plaintiff's demand, Defendants and each of

5   them, have intentionally failed and refused to make restitution or replacement pursuant to Song-

6   Beverly.

7       48.     As a result of the acts and/or omissions of the Defendants, and each of them, Plaintiff

8   has sustained damage in the amount actually paid or payable under the contract, plus prejudgment

9   interest thereon at the legal rate. Plaintiff will seek leave to amend this Complaint to set forth the

10  exact amount thereof when that amount is ascertained.

11      49.     As a further result of the actions of Defendants, and each of them, Plaintiff has

12  sustained incidental and consequential damages in an amount yet to be determined, plus interest

13  thereon at the legal rate. Plaintiff will seek leave to amend this Complaint to set forth the exact

14  amount of incidental damages when that amount is ascertained.

15      50.     As a further result of the actions of Defendants, and each of them, Plaintiff has

16  sustained damages equal to the difference between the value of the Vehicle as accepted and the

17  value the Vehicle would have had if it had been as warranted.

18      51.     As a direct result of the acts and/or omissions of Defendants, and each of them, and

19  in pursuing Plaintiff's claim, it was necessary for Plaintiff to retain legal counsel. Pursuant to

20  Song-Beverly, Plaintiff, in addition to his other remedies, is entitled to the recovery of his

21  attorneys' fees based upon actual time expended and reasonably incurred, in connection with the

22  commencement and prosecution of this action.

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

## SECOND CAUSE OF ACTION

### Breach of Express Warranty under Song-Beverly Warranty Act

### Against all Defendants

52.   Plaintiff realleges each and every paragraph (1-51) and incorporates them by this reference as though fully set forth herein.

53.   The Vehicle had defects, malfunctions, mis adjustments, and/or nonconformities covered by the warranty that substantially impaired its value, use, or safety to Plaintiff.

54.   Plaintiff delivered the Vehicle to Manufacturer or its authorized repair facilities for repair.

55.   Defendants, and each of them, failed to service or repair the Vehicle to match the written warranty after a reasonable number of opportunities to do so.

56.   The acts and/or omissions of Defendants, and each of them, in failing to perform the proper repairs, part replacements, and/or adjustments, to conform the Vehicle to the applicable express warranties constitute a breach of the express warranties that the Manufacturer provided to Plaintiff, thereby breaching Defendants' obligations under Song-Beverly.

57.   Defendants, and each of them, failed to perform the necessary repairs and/or service in good and workmanlike manner. The actions taken by Defendants, and each of them, were insufficient to make the Subject Vehicle conform to the express warranties and/or proper operational characteristics of like Vehicles, all in violation of Defendants' obligations under Song-Beverly.

58.   Plaintiff hereby gives written notice and makes demand upon Manufacturer for replacement or restitution, pursuant to Song-Beverly. Defendants and each of them, knowing their obligations under Song-Beverly, and despite Plaintiff's demand, failed and refused to make restitution or replacement according to the mandates of Song-Beverly. The failure of Defendants, and each of them, to refund the price paid and payable or to replace the Vehicle was intentional and justifies an award of a Civil Penalty in an amount not to exceed two times Plaintiff's actual damages.

59.   As a result of the acts and/or omissions of Defendants, and each of them, and

1  pursuant to the provisions of the Song-Beverly, Plaintiff is entitled to replacement of the Vehicle or
2  restitution of the amount actually paid or payable under the contract, at Plaintiff's election, plus
3  prejudgment interest thereon at the legal rate. Plaintiff will seek leave of Court to amend this
4  Complaint to set forth the exact amount of restitution and interest, upon election, when that amount
5  has been ascertained.

6        60.    Additionally, as a result of the acts and/or omissions of Defendants, and each of
7  them, and pursuant to Song-Beverly, Plaintiff has sustained and is entitled to consequential and
8  incidental damages in amounts yet to be determined, plus interest thereon at the legal rate. Plaintiff
9  will seek leave of the court to amend this complaint to set forth the exact amount of consequential
10  and/or incidental damages, when those amounts have been ascertained.

11        61.    As a direct result of the acts and/or omissions of Defendants, and each of them, and
12  in pursuing Plaintiff's claim, it was necessary for Plaintiff to retain legal counsel. Pursuant to
13  Song-Beverly, Plaintiff, in addition to other remedies, is entitled to the recovery of his attorneys'
14  fees based upon actual time expended and reasonably incurred, in connection with the
15  commencement and prosecution of this action.

16  ///
17  ///
18  ///
19  ///
20  ///
21  ///
22  ///
23  ///
24  ///
25  ///
26  ///
27  ///
28  ///

**THIRD CAUSE OF ACTION**

**Fraudulent Concealment**

**Against all Defendants**

62.     Plaintiff realleges each and every paragraph (1-61) and incorporates them by this reference as though fully set forth herein.

63.     Defendant knew well before plaintiff purchased the subject vehicle, that the PowerShift transmission defective.  Defendant was under a duty to disclose the PowerShift Transmission problems because of the nature and extent of the problems which clearly posed safety issues.

64.     Defendants intended to conceal the information.   The September 10, 2019 Detroit Free Press investigative article which plaintiff has recently learned of establishes that Ford engaged in an effort to withhold from its consumers, the valuable information about quality problems in the PowerShift Transmissions.  Ford created "talking points' for its dealer network and otherwise instructed its dealers to advise that the transmission operated "normally." In fact, the opposite was true.

65.     At the time of sale and throughout the repair efforts, Plaintiff had no reason to doubt that Ford or its dealer was/were acting in good faith and being fully transparent with all pertinent information.   Further, plaintiff relied on the fact that Ford and the dealership understood the problems plaintiff was experiencing and that they were specific to plaintiff's vehicle instead part of a widespread inherent product defect that plaintiff has only recently learned was omitted from the information provided at the time of sale as well as during each repair visit.

66.     Further, Defendants, and each of them, deceived Plaintiff by promising that the subject vehicle would conform to the applicable warranties, when Defendants knew that the subject vehicle's defects could not, in fact, be repaired.

67.     As a direct and proximate result of Defendants' misrepresentations or omissions of material fact, Plaintiff has suffered damages, including actual, consequential, and incidental damages, according to proof.

COMPLAINT FOR DAMAGES

1    68.    Plaintiff's reliance on Defendants' representations with regard to the subject vehicle

2  was a substantial factor in causing Plaintiff's harm and, therefore, Plaintiff is entitled to rescission

3  of the Contract, and restitution in an amount according to proof at hearing.

4  ///

5  ///

6  ///

7  ///

8  ///

9  ///

10  ///

11  ///

12  ///

13  ///

14  ///

15  ///

16  ///

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

COMPLAINT FOR DAMAGES

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against all Defendants, and each of them, as follows:

    A.  For replacement or restitution, at Plaintiff's election, according to proof;

    B.  For incidental damages, according to proof;

    C.  For consequential damages, according to proof;

    D.  For a civil penalty as provided in Song-Beverly, in an amount not to exceed two times the amount of Plaintiff's actual damages;

    E.  For actual attorney's fees, reasonably incurred;

    F.  For costs of suit and expenses, according to proof;

    G.  For the difference between the value of the Vehicle as accepted and the value the Vehicle would have had if it had been as warranted;

    H.  For remedies provided in Chapters 6 and 7 of Division 2 of the Commercial Code;

    I.  For pre-judgment interest at the legal rate;

    J.  For punitive damages according to proof;

    K.  Such other relief the Court deems appropriate.

Date:  May 26, 2020

THE BARRY LAW FIRM

By: _____
DAVID N. BARRY, ESQ.
Attorney for Plaintiff,
DEREK WOODS

-17-
COMPLAINT FOR DAMAGES